In re Paul Anthony PARKER, Debtor.

Paul Anthony PARKER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 95–0223–8G7.
Adv. No. 95–220.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 5, 1996.

Rodney Dillon, Sarasota, FL, for Plaintiff.

Philip Doyle, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for Defendant.

## ORDER ON MOTION BY UNITED STATES FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Motion for Summary Judgment filed by the United States of America (the United States). The Motion relates to a Complaint to Determine Dischargeability of Debt filed by the Debtor, Paul Anthony Parker.

In his Complaint, the Debtor acknowledges that he is obligated to the United States for income taxes due for the tax years ending on December 31, 1984, December 31, 1985, December 31, 1988, December 31, 1989, December 31, 1990, and December 31, 1991. The Debtor alleges, however, that the obligations do not fall within the exceptions to discharge contained in Section 523(a)(1) of the Bankruptcy Code, and therefore seeks a determination that the taxes are dischargeable in his Chapter 7 case.

In its Motion for Summary Judgment, the United States concedes that the taxes due for 1984 and 1985 are dischargeable, and consents to the entry of a judgment in the Debtor's favor determining that the taxes arising from those tax years are dischargeable. The United States contends that the balance of the taxes are not dischargeable, however, because the Debtor failed to file tax returns for the respective tax years, and also because the taxes were assessed within 240 days before the date that the Debtor filed his Chapter 7 petition. Consequently, the United States asserts that the taxes are excepted from discharge pursuant to Section 523(a)(1)(A) and Section 523(a)(1)(B)(i) of the Bankruptcy Code.

Further, with respect to the taxes claimed for 1991, the United States asserts that the return for that taxable year was last due after three years before the filing of the bankruptcy petition. Accordingly, the United States contends that the taxes for 1991 are also nondischargeable under Section 523(a)(1)(A) and Section 507(a)(8)(A)(i). At the hearing on the Motion for Summary Judgment, the Debtor conceded that the return for the 1991 tax year was last due after three years before he filed his Chapter 7 case, and that the 1991 taxes therefore are not dischargeable.

The obligations remaining for consideration, therefore, are the taxes arising from the 1988, 1989, and 1990 tax years.

Section 523 of the Bankruptcy Code, entitled "Exceptions to discharge," provides in part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; [or]

(B) with respect to which a return, if required—

(i) was not filed;

. . . . .

The United States first asserts that the Debtor did not file any tax returns for the 1988, 1989, and 1990 tax years. The United States claims, therefore, that the taxes due for those years fall squarely within the exception to discharge contained in Section 523(a)(1)(B)(i).

■ The United States next asserts that the taxes at issue are the kind of tax specified in Section 507(a)(8) of Title 11, and therefore fall within the exception to discharge contained in Section 523(a)(1)(A) quoted above. Based on that section, a tax described in Section 507(a)(8) is not dischargeable, regardless of whether any claim for the tax was filed. Section 507 of the Bankruptcy Code specifies the types of claims that are entitled to priority in distribution in bankruptcy cases. A claim described in Section 507(a)(8) is as follows:

11 U.S.C. § 507. Priorities

. . . . .

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

. . . . .

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition.

. . . .

The United States asserts that the Debtor's income tax liabilities for 1988, 1989, and 1990 were assessed within 240 days of his Chapter 7 petition, and therefore are the type of tax specified in Section 507(a)(8)(A)(ii).

To support its contentions, the United States filed Certificates of Assessments and Payments ("Certificates") for each of the tax years at issue. These Certificates reflect the following information:

Type of Tax: Individual Income Tax Return Period Ending: 12/31/1988

| Date | Transaction Explanation | Assessments | Assessment Date |
|---|---|---|---|
| 04/01/94 | Substitute for return | .00 | 05/30/94 |
| | Estimated tax penalty | 794.00 | 11/28/94 |
| | Delinquency penalty | 3,107.00 | 11/28/94 |
| | Audit deficiency | 12,427.00 | 11/28/94 |
| | Interest | 10,457.86 | 11/28/94 |

Type of Tax: Individual Income Tax Return Period Ending: 12/31/1989

| Date | Transaction Explanation | Assessments | Assessment Date |
|---|---|---|---|
| 04/01/94 | Substitute for return | .00 | 06/06/94 |
| | Estimated tax penalty | 419.00 | 12/05/94 |
| | Delinquency penalty | 1,540.00 | 12/05/94 |
| | Audit deficiency | 6,159.00 | 12/05/94 |
| | Interest | 3,808.31 | 12/05/94 |

Type of Tax: Individual Income Tax Return Period Ending: 12/31/1990

| Date | Transaction Explanation | Assessments | Assessment Date |
|---|---|---|---|
| 04/01/94 | Substitute for return | .00 | 05/23/94 |
| | Estimated tax penalty | 333.00 | 11/28/94 |
| | Delinquency penalty | 1,261.00 | 11/28/94 |
| | Audit deficiency | 5,042.00 | 11/28/94 |
| | Interest | 2,125.53 | 11/28/94 |

The Certificates are transcripts by the United States of the activity in the respective accounts "as disclosed by the records of" the Internal Revenue Service, and do not constitute the original or underlying documents. The United States alleges that the Certificates are sufficient to show that the Debtor did not file tax returns for 1988, 1989, and 1990, and that the 1988 taxes were assessed on November 28, 1994, that the 1989 taxes were assessed on December 5, 1994, and that the 1990 taxes were also assessed on November 28, 1994.

The Debtor filed his Chapter 7 petition on January 11, 1995.

## I. § 523(a)(1)(B)(i)—FAILURE TO FILE RETURNS

■ The United States first asserts that the Debtor's income tax liabilities for 1988 through 1990 are not dischargeable pursuant to Section 523(a)(1)(B)(i) of the Bankruptcy Code because the Debtor did not file tax returns for those years. The Court concludes that the United States is not entitled to the entry of a summary judgment on this issue.

■ The United States acknowledges that "substitutes for returns were filed by the Internal Revenue Service pursuant to 26 U.S.C. 6020(b)." (Memorandum in Support of Motion for Summary Judgment, p. 2). The question of whether such "substitutes for returns" qualify as returns for dischargeability purposes under Section 523(a)(1)(B)(i) was addressed by the Bankruptcy Court in *In re Gless,* 181 B.R. 414 (Bankr.D.Neb. 1993). In that case, the debtor had filed a complaint to determine the dischargeability of certain income tax liabilities, and the Internal Revenue Service moved for the entry of a summary judgment that the taxes were not dischargeable on the basis of the debtor's failure to file tax returns for the years at issue. In *Gless,* a "substitute for return" had been prepared by the Internal Revenue Service on behalf of the debtor. No copy of the document filed on behalf of the debtor was produced. The Bankruptcy Court recognized that the Secretary of the Treasury may prepare returns on behalf of a taxpayer under 26 U.S.C. § 6020. Under subsection (a)

of § 6020, the return prepared by the Secretary is then signed by the taxpayer and accepted by the Secretary as the taxpayer's return. Under subsection (b) of § 6020, the return is not signed by the taxpayer, but is "subscribed by the Secretary" and deemed "prima facie good and sufficient for all legal purposes."

In *Gless,* a Certificate of Assessments and Payments was the only document retained by the United States concerning the debtor's taxes. No copy of the substitute for return was presented, and the Bankruptcy Court could make no determination as to the document's preparation or content. The Court found that issues of fact existed regarding whether the debtor cooperated with the United States in the preparation of the substitute for return, and whether the debtor ever signed any document from which his taxes were calculated. Consequently, the Court found that an ultimate issue existed regarding whether the debtor had "filed tax returns" for the years in dispute, and denied the United States' motion for summary judgment. *Gless,* 181 B.R. at 417.

Judge Baynes recently addressed the issue in *In re Berard,* 181 B.R. 653 (Bankr. M.D.Fla.1995). In *Berard,* as in *Gless,* the debtors had commenced an adversary proceeding to determine that taxes owed to the United States were dischargeable, and the United States responded that the taxes were not dischargeable because the debtors had not filed tax returns for the years in question. Both parties filed motions for summary judgment. In that case, the debtors had not filed Form 1040 tax returns for 1982 through 1986, and were audited in 1987. Following the audit, the Internal Revenue Service prepared a "Form 4549, Income Tax Examination Changes," and this Form was signed both by the Internal Revenue Service and by the debtors. The question before the Court was whether the Form 4549 constituted a "return" for purposes of Section 523(a)(1) of the Bankruptcy Code. *Berard,* 181 B.R. at 654.

Judge Baynes first notes that the Bankruptcy Code does not define "return" or

"filed" as those terms are used in Section 523(a)(1). *Id.* at 655. He then recognizes the authority of the Internal Revenue Service to create tax returns under 26 U.S.C. § 6020, but concludes that § 6020 does not resolve the question of whether a return prepared by the Service is a "return" within the meaning of Section 523(a)(1), regardless of whether the return was prepared under subsection (a) or subsection (b) of § 6020. *Id.* Instead, Judge Baynes considered the case law under Section 523(a)(1)(B), which emphasizes the debtor's cooperation in arriving at an assessment, and the United States' acceptance of the assessment. He concluded:

> A form may be considered a filed return if it supplies the Internal Revenue Service all necessary information to determine a taxpayer's liability. Therefore, it logically stands to reason, a Form 4549 which is based upon figures it derived with a taxpayer's assistance and waiver to assessment, support a conclusion a return has been filed.

*Id.* at 657. Based on this analysis, the Court ruled that the Form in *Berard* satisfied the requirements of a "filed return" as set forth in Section 523(a)(1), and determined that the taxes owed by the debtors were dischargeable. *Id.*

■ The Court concurs with the decisions in *Berard* and *Gless* and finds that a "return" for purposes of Section 523(a)(1)(B)(i) is not limited to the traditional Form 1040 return prepared by the taxpayer, or by the taxpayer's accountant at his request, and mailed to the Internal Revenue Service. Instead, a "return" for purposes of Section 523(a)(1)(B)(i) may also include other forms initiated by the Internal Revenue Service, provided that the debtor cooperated with the Internal Revenue Service in the completion of the form and furnished the information to the Service which was necessary to compute the debtor's tax liability. Accordingly, for a tax to be determined non-dischargeable under Section 523(a)(1)(B)(i) on the basis that a "return" was "not filed," it must be determined not only that the debtor did not file a Form 1040 tax return, but also that no form was prepared by the Internal Revenue Service with the debtor's assistance and assent.

In this case, the only support for the Motion for Summary Judgment filed by the United States are the Certificates for each of the tax years in question. As stated above, these Certificates are transcripts of the assessments and credits relating to the account specified, as shown by the Internal Revenue Service's records. They are only secondary documents summarizing account activity. Each of the Certificates refers to a "substitute for return" dated April 1, 1994, but the original documents or "substitute returns" were not provided. With only transcript entries to constitute the record, the Court cannot determine whether the Debtor contributed to the preparation of the substitute returns, how the information was obtained to prepare the substitute returns, or whether the Debtor consented to the assessments based on the substitute returns.

At the hearing, the Debtor presented a letter addressed to him from the Internal Revenue Service dated April 1, 1994, the same date as the "substitute for returns" noted in the Certificates. The letter refers to the 1988 and 1989 tax years, and states that copies of two reports are enclosed "explaining why we believe adjustments should be made in the amount of your tax." The letter states that the Debtor either may (1) sign an enclosed consent to assessment, if he agrees with the reports, or (2) pursue various other remedies, if he does not agree with the reports. There is no indication, however, that the Debtor did or did not agree.

■ This case is before the Court in the context of a Motion for Summary Judgment. The burden is on the moving party to show that there is no genuine issue as to any material fact. If this initial burden is satisfied by the moving party, the other party must then show that a genuine dispute does in fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When evaluating the motion, inferences drawn from the underlying facts are to be decided in the light most favorable to the non-moving party." *Gless,* 181 B.R. at 415, citing *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1976).

■ Further, this case involves questions concerning the dischargeability of a debt. It is fundamental that exceptions to discharge are narrowly construed against the creditor and in favor of the debtor, and the burden is on the creditor to establish that the debt should be excepted from the discharge. *Gless,* 181 B.R. at 417, citing *Murphy & Robinson Investment Co. v. Cross,* 666 F.2d 873 (5th Cir.1982); *D'Avanza v. United States (In re D'Avanza),* 101 B.R. 787 (Bankr.M.D.Fla.1989).

In view of these standards for analysis at this point in the case, and also in view of the conclusion that a "return" may include forms initially generated by the United States if the taxpayer cooperated in their preparation, the Court concludes that the United States did not satisfy its burden of establishing that the Debtor did not file tax returns for 1988, 1989, or 1990. The United States did not show that it completed the "substitute for returns" unilaterally, without the Debtor's cooperation or assistance. The United States did not produce either the original substitute returns or copies of the substitute returns, so the Court can make no determination as to their content or significance, and there is no evidence regarding how the information was gathered to complete the substitute returns. Essentially, the Court cannot find on the basis of the record either that the Debtor cooperated with the United States, or that the Debtor did not cooperate with the United States, in the preparation of the substitute returns. Given this status of the evidence and the controlling standards, the Court must find that the United States did not satisfy its burden under Section 523(a)(1)(B)(i).

## II. § 523(a)(1)(A)—ASSESSED WITHIN 240 DAYS

■ The United States also asserts that the Debtor's income tax liabilities for 1988 through 1990 are not dischargeable pursuant to Section 523(a)(1)(A) and Section 507(a)(8) of the Bankruptcy Code because the taxes were assessed within 240 days of the date that the Debtor filed his Chapter 7 petition. The United States contends that the Certificates which it filed in support of the Motion for Summary Judgment reflect that the taxes

for 1988, 1989, and 1990, were assessed on November 28, 1994, December 5, 1994, and November 28, 1994, respectively, all within 240 days of the date that the Debtor filed his petition.

The Debtor contends that the taxes were assessed no later than April 1, 1994, more than 240 days before the Chapter 7 petition was filed. It was on that date that the Internal Revenue Service sent the letter to the Debtor to explain why the Service believed "adjustments" should be made to the amount of the tax owed by the Debtor. Various documents and schedules were attached to the letter as described above.

The District Court encountered a similar situation in *In re Hartman,* 110 B.R. 951 (D.Kan.1990). In *Hartman,* the debtor received a letter from the Internal Revenue Service which stated that the debtor would receive a report to explain why the amount of his tax liability must be adjusted. The letter was dated September 9, 1986, and was accompanied by a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." Subsequently, on November 26, 1986, a separate form was issued to the debtors which reported that the debtors owed the sum of $32,865.60 to the United States as increased tax, penalties, and interest. The bankruptcy petition was filed on June 25, 1987. An adversary proceeding was commenced to determine the dischargeability of the taxes, and the Internal Revenue Service filed a motion for summary judgment on the basis that the taxes were "assessed" on November 26, 1986, within the 240–day period, and therefore were not dischargeable under Section 523(a)(1)(A). The debtors responded that the taxes were "assessed" on September 9, 1986, the date of the notice of deficiency, and therefore were dischargeable. *In re Hartman,* 110 B.R. at 952–53.

The Bankruptcy Code does not define "assess" or "assessment." Generally, bankruptcy courts have concluded that the assessment date of federal income taxes for the purposes of § 507(a)(8)(A)(ii) under the Bankruptcy Code is the assessment date as determined under the Internal Revenue Code. *Id.* at

956. In *Hartman,* the District Court referred to 26 U.S.C. § 6203, which provides:

> The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with the regulations prescribed by the Secretary.

The District Court then referred to the applicable regulation, which provides:

> The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer.

26 C.F.R. § 301.6203–1.

█ Based on these provisions, the District Court determined that the letter received by the debtors in September of 1986 constituted a simple notice by the Internal Revenue Service that an investigation had revealed that the amount of the tax shown on the prior return was deficient. *Hartman,* 110 B.R. at 955. Assessment is a formal, discrete act with specific legal consequences, and is made only after the taxpayer has received this notice of the deficiency. The Court concluded in that case that the "assessment" occurred on November 26, 1986, the date that the form was issued to the debtors which reported the amount of the increased taxes and penalties owed by the debtors. *Id.* at 956. See also *In re Wernimont,* 183 B.R. 181, 184 (Bankr.N.D.Iowa 1994), citing *In re King,* 961 F.2d 1423 (9th Cir.1992). (The assessment of an income tax involves the calculation and fixing of the amount payable.)

In this case, the letter from the Internal Revenue Service to the Debtor dated April 1, 1994, was simply a notice that the Service had received information indicating that the amount set forth in the substitute returns may be insufficient, and that additional taxes may be charged if the Debtor does not pursue his administrative remedies. The letter allowed the Debtor thirty days within which to contest the Service's findings. Accordingly, the taxes could not have been assessed until after the thirty day period had expired without action by the Debtor.

The Certificates filed by the United States show that the assessments based on the substitutes for returns for 1988, 1989, and 1990, were made on May 30, 1994, June 6, 1994, and May 23, 1994, respectively. The amounts of these assessments are each ".00." The letter dated April 1, 1994, shows that the Debtor's corrected tax liability is the amount which is shown as the "audit deficiency" on the Certificates. The Certificates show that the audit deficiencies for 1988, 1989, and 1990, were assessed on November 28, 1994, December 5, 1994, and November 28, 1994, respectively. The Debtor's Chapter 7 petition was filed on January 11, 1995. Consequently, the dates of all of the assessments are within 240 days prior to the filing of the petition.

The Court concludes that the United States has satisfied its burden that the taxes were assessed within 240 days before the filing of the Chapter 7 petition, and therefore are nondischargeable.

## III.   CONCLUSION

The United States has acknowledged that the Debtor's tax liabilities for 1984 and 1985 are dischargeable.

The Debtor has acknowledged that his tax liabilities for 1991 are not dischargeable.

The Debtor admits that he is obligated for income taxes for 1988, 1989, and 1990, and alleges that these debts are dischargeable. The United States failed to establish that the Debtor did not file returns for the 1988, 1989, and 1990 tax years within the meaning of Section 523(a)(1)(B)(i) of the Bankruptcy Code, and the tax debts are not nondischargeable on that basis. The taxes shown as audit deficiencies in the Certificates of Assessments and Payments were assessed within 240 days before the filing of the Debtor's Chapter 7 petition, however, and are therefore nondischargeable under Section 523(a)(1)(A) and Section 507(a)(8)(A)(ii) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by the United States is granted in part and denied in part as set forth herein.

2. The debts for income taxes owed by the Debtor, Paul Anthony Parker, for the 1984 and 1985 tax years are discharged in the Debtor's Chapter 7 case.

3. The debts for income taxes owed by the Debtor for the 1991 tax year are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1) and 507(a)(8)(A)(i).

4. The debts for income taxes owed by the Debtor for the 1988, 1989, and 1990 tax years are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(ii).

A separate judgment will be entered in accordance with this order.