Alan Wayne **GENTRY**, Appellant,

v.

**UNITED STATES of America and Internal Revenue Service,** Appellees.

No. 3:97–0218.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 9, 1998.

Warren Davidson Broemel, Boult, Cummings, Conners & Berry, Nashville, TN, for appellant.

Shannon L. Hough, Dept. of Justice, Washington, DC, for appellee.

ECHOLS, District Judge.

This case is before the Court on appeal from the United States Bankruptcy Court for the Middle District of Tennessee. Also pending before the Court is Appellant's Motion for Oral Argument (Docket Entry No.10), to which no response has been filed. For the reasons discussed in the accompanying Memorandum, the decision of the Bankruptcy Court is hereby AFFIRMED. This appeal is hereby DISMISSED. Appellant's

Motion for Oral Argument is hereby DENIED as MOOT.

It is so ORDERED.

## MEMORANDUM

After filing for bankruptcy under Chapter 7 of the Bankruptcy Code in 1994, Appellant Alan Wayne Gentry ("Debtor") instituted an adversary proceeding against Appellee, alleging that his tax liabilities for the tax years 1979 and 1980 should be discharged. Debtor filed a motion for summary judgment on the dischargeability issue, which the Bankruptcy Court denied. The parties then filed cross-motions for summary judgment. The Bankruptcy Court found that Debtor's tax liabilities for the tax years 1979 and 1980 were nondischargeable under 11 U.S.C. § 523(a)(1)(B), and granted summary judgment in favor of Appellee. In this appeal, Debtor challenges the Bankruptcy Court's ruling, contending that the court committed clear error in finding that Debtor failed to file returns for the tax years in question, rendering his tax liabilities for those years nondischargeable.[1]

Under Bankruptcy Rule 8013, "[o]n appeal, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." B.R. 8013. The bankruptcy court's findings of fact may not be set aside unless "clearly erroneous," and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.* Conclusions of law, however, are subject to de novo review. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988), *appeal after remand,* 895 F.2d 1123 (6th Cir.1990). If a question is a mixed question of law and fact, the Court must "break it down into its constituent parts and apply the appropriate standard of review for each part." *In re Batie,* 995 F.2d 85, 88 (6th Cir.1993).

The facts in this case are largely undisputed. Debtor failed to file Federal Tax Form 1040 tax returns for the 1979 and 1980 tax years. In 1984, while Debtor was incarcerat-

---

1. Since its institution, this proceeding has been converted from one under Chapter 7 to one under Chapter 13. The Court has previously held

that said conversion does not moot the issue raised in this appeal.

ed in state prison, the IRS contacted him concerning his tax liabilities for those years. Debtor voluntarily met with an IRS agent, who informed him that the IRS had learned that Debtor had failed to report $52,700.00 in income from silver he had received in exchange for stolen property in 1980. Debtor disputed the IRS's calculation of the income earned, contending that he had never had possession of the silver in question.[2]

The IRS prepared substitute returns for Debtor, including as income the full value of the silver allegedly received. Debtor refused to sign the returns, asserting that he had already testified in state court proceedings that he had not received the silver, and thus that acknowledgement of such receipt on a tax return would subject him to a charge of perjury. Pursuant to 26 U.S.C. § 6020(b), the IRS executed the substitute returns without Debtor's signature.[3]

In May 1985, the IRS sent a notice of tax liability to Debtor's prison. Since the 1984 meeting with the IRS, Debtor had been paroled, then rearrested and convicted of a separate crime. Along with the deficiency notice, the IRS sent Debtor Form 870, entitled "Consent to Assessment and Collection." In response, Debtor petitioned the United States Tax Court for a redetermination of tax deficiency. The petition was dismissed for lack of jurisdiction. In May 1986, the IRS sent Debtor a second notice of liability, along with Form 4089, which provided for consent to immediate assessment and collection. Debtor again filed a petition for redetermination with the Tax Court.

On September 18, 1987, Debtor entered into a Decision in Tax Court, whereby he agreed that he was deficient in the amounts claimed by the IRS. In December 1987, the IRS assessed the 1979 and 1980 tax deficiencies against Debtor. In April 1989, after the IRS notified Debtor that tax liens were being placed on several of his real properties, Debtor executed and returned Forms 870 and 4089. Debtor filed a Chapter 7 bankruptcy petition in December 1994.

The issue presented to the Bankruptcy Court was whether Debtor would be permitted to discharge his tax liabilities in bankruptcy. Under the Bankruptcy Code, discharge of a tax debt will not be permitted where ". . . a return, if required . . . was not filed." 11 U.S.C. § 523(a)(1)(B). As such, the question before the lower court was whether Debtor, by executing Forms 870 and 4089, filed "returns" for the 1979 and 1980 tax years.

■ As an initial matter, the law is clear that a debtor is not deemed to have filed a "return" where the IRS, by virtue of the debtor's failure to file, is forced to execute a substitute return under 26 U.S.C. § 6020(b). *In re Lowrie*, 162 B.R. 864, 866 (Bankr. D.Nev.1994); *In re Chapin*, 148 B.R. 304, (C.D.Ill.1992); *In re Gushue*, 126 B.R. 202, 204 (Bankr.E.D.Pa.1991). Thus, the Bankruptcy Court correctly found that the IRS's execution of substitute returns for Debtor for the 1979 and 1980 tax years does not qualify Debtor for discharge.

■ Debtor claims that his execution of Forms 870 and 4089 in 1989 constituted filing of "constructive" returns for the tax years in question. A "constructive" return may be deemed to have been filed where

> . . . a document is executed pursuant to an agreement in which the taxpayer and the Internal Revenue Service are empowered to create; disclosing the data from which the tax can be computed; intended to act as a return for assessment and collection; and, executed by the taxpayer. . . .

*Matter of Berard*, 181 B.R. 653, 655 (Bankr. M.D.Fla.1995) (citing *Germantown Trust Co.*

---

**2.** Debtor further asserted that he had always shared with partners the profits gained from his criminal activities. As such, he argued that he should not be required to report as income the total amounts of said profits.

**3.** That Section provides in relevant part:

> (b) Execution of return by Secretary [of the Treasury].—

> (1) Authority of Secretary to execute return. If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

*v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940)). Courts deciding whether a constructive return has been filed consider (1) whether the taxpayer cooperated with the government during the auditing process, (2) whether the taxpayer consented to immediate assessment, and (3) whether the IRS deemed the filed document to be a return. *Berard,* 181 B.R. at 657 (citing *Elmore v. United States,* 165 B.R. 35 (Bankr.S.D.Ind. 1994) *Lowrie,* 162 B.R. 864; *Carapella v. United States,* 84 B.R. 779 (Bankr.M.D.Fla. 1988)).

> Cases finding a tax return has not been filed suggest the Debtors were uncooperative, and in fact either contested the proposed changes, or did not supply the Internal Revenue Service with the information necessary to determine tax liability.

*Id.* (citing numerous cases).

The Bankruptcy Court held that Debtor had not filed constructive returns for the tax years in question. The court noted that "[t]he IRS had already expended a considerable effort in researching and preparing the return, fighting the Debtor and Tax Court, and then assessing him before the Debtor submitted Forms 870 and 4089." As such, the court concluded that Debtor's cooperation with IRS officials "simply came too late" to render Forms 870 and 4089 constructive returns under the above test.

■ Debtor contends that the Bankruptcy Court committed clear error in finding that Forms 870 and 4089 were filed too late to be considered constructive returns. In particular, Debtor asserts that the record shows that, contrary to the Bankruptcy Court's conclusion, Debtor fully cooperated with IRS officials during the auditing process. Debtor also avers that the lower court ignored evidence that he was threatened by the IRS when he attempted to file a 1040 tax return in 1984, and that prison officials refused to provide Debtor with 1040 forms. As such,

Debtor contends that the lower court's conclusion that Debtor's tax debt was nondischargeable should be overturned.

The Court finds that the Bankruptcy Court's finding was not clearly erroneous, and therefore must be affirmed. Although the language of the opinion below was somewhat unclear,[4] the Court agrees with the lower court's finding that, in the present case, Debtor's filing of Forms 870 and 4089 was not equivalent to the submission of constructive returns.

The record reveals that Debtor cooperated with the IRS in meeting with an agent in 1984 to discuss his tax liabilities. Debtor refused, however, to execute the substitute returns the agent prepared on his behalf. Rather, Debtor disputed the alleged amount of income for the years in question. The IRS was forced to execute and file the returns without Debtor's signature. Further, when the IRS notified Debtor of the amount of back taxes owed, Debtor refused to consent to assessment and collection, and instead twice challenged the IRS's determination in Tax Court. Debtor did not admit the full extent of his liability until he entered into a stipulation in Tax Court in 1987. He then waited until nearly sixteen months after the assessment to file the forms he contends are "returns." Given that these forms were submitted long after the IRS had completed its research regarding Debtor's unreported income, had prepared and executed substitute returns, had argued against Debtor in Tax Court, and had assessed Debtor for the monies owed, the Court finds that Debtor's filed forms were not "intended to act as a return for assessment and collection," and thus cannot be considered constructive returns.

Moreover, even assuming the truth of Debtor's allegation that the IRS and prison officials wrongfully prevented him from filing 1040 forms for the years in question, that fact does not tend to show that Debtor was

4. For example, the lower court's broad statement that Debtor's execution of Forms 870 and 4089 "simply came too late" carries more than one possible interpretation. *See In re Sullivan,* 200 B.R. 327, 329 (Bankr.N.D.Ohio 1996) (noting that "[t]he [*Gentry*] court did not explain whether the debtor's filings failed to qualify as returns under section 523(a)(1)(B) because of the nature

of the forms filed, because they were filed after the taxes had been determined and assessed by the IRS, or because 16 months after the assessment was just too long"). Despite this somewhat vague language, as discussed below, the Court agrees with the Bankruptcy Court's finding that Debtor's filings did not constitute constructive returns for dischargeability purposes.

precluded either from executing the substitute tax returns, or from signing Forms 870 and 4089 much earlier.[5] Nor is the existence of the alleged governmental misconduct relevant to the fact that Debtor twice subjected the IRS to litigation in Tax Court. In short, the record indicates that Debtor was not deprived of the opportunity to file returns for the years in question.

In the lower court, Debtor contended that the recent cases of *In re Sullivan*, 200 B.R. 327 (Bankr.N.D.Ohio 1996), and *Matter of Berard*, 181 B.R. 653 (Bankr.M.D.Fla.1995), are controlling in the present case. The Court agrees with the Bankruptcy Court's finding that those cases are distinguishable from this case.

In *Sullivan*, although the debtor failed to timely file tax returns, and protested the amount of liability for several years, he later filed 1040 forms for the years in question, along with a Form 870. 200 B.R. at 328. The IRS used the debtor's forms to calculate and assess the unpaid taxes. *Id.* As such, the debtor's filings were found by the court to have been made in time to qualify as "returns" for dischargeability purposes. *Id.* at 332.

The *Sullivan* court correctly noted that the plain language of 11 U.S.C. § 523(a)(1)(B) does not impose a time limit within which debtor must file a "return" to secure discharge in bankruptcy. *Id.* However, because the debtor in that case filed 1040 forms for the years in question, which forms the IRS admitted would have been considered "returns" had they been timely filed, the Sullivan court was not faced with the question presented here—namely, whether the forms submitted by Debtor constituted "returns" under the *Berard* test. *See Mickens v. United States*, 214 B.R. 976, 977–78 (N.D.Ohio 1997). In this case, although Debtor's delay in filing Forms 870 and 4089

impacts the analysis of whether said forms constituted returns, the delay is but one consideration in the overall evaluation of whether the forms met the criteria for constructive returns set forth in *Berard*. As discussed above, the Court agrees with the Bankruptcy Court's finding that Debtor's filing failed the *Berard* test.

The present case is likewise factually distinguishable from *Berard*. In *Berard*, the debtors failed to file tax returns for several years, but later filed Form 4549, thereby acknowledging acceptance of the results of the audit performed by the IRS. 181 B.R. at 654. The court noted that the debtors "were cooperative during the audit and disclosed all necessary information to prepare income tax returns. The Debtors signed documents purporting to fix Debtors' tax liabilities for the years at issue, and the District Director accepted the Form 4549 which embodied those liabilities." *Id.* The court held that the executed Form 4549 constituted a constructive return. *Id.* at 657.

In the present case, by contrast, the record supports the Bankruptcy Court's finding that Debtor was far less cooperative than those in *Berard*. Further, while the *Berard* court emphasized that "it is important to note the acceptance of the Form 4549, and the Debtors' consent to assessment and collection, relieved the [IRS] of certain statutory duties [that] would not otherwise be relieved," *id.* at 656, in this case, Debtor's execution of Forms 870 and 4089 did not serve to lessen the burden on the IRS. Rather, as discussed above, Debtor did not execute Forms 870 and 4089 until after he had forced the IRS to incur expense and time processing Debtor's substitute returns and defending its position regarding Debtor's liability.[6]

In sum, as discussed above, courts analyzing whether "returns" have been filed for

---

5. Further, the IRS points out that Debtor was paroled from prison for several months during 1984, during which time he presumably could have obtained and filed tax returns.

6. This case is also distinct from *Matter of Gless*, 181 B.R. 414 (Bankr.D.Neb.1993), upon which Debtor relies. In *Gless*, the IRS prepared substitute returns for the tax years in question. *Id.* at 415. The court found that a genuine issue of material fact existed regarding whether the debt-

or had cooperated in the preparation of the returns, and had signed said returns. *Id.* at 417. The court held that, *if* the debtor was found to have cooperated with the IRS, and to have signed the substitute returns, then the substitute returns would be deemed constructive returns under Section 523(a)(1)(B). *Id.* In the present case, by contrast, it is undisputed that Debtor did not sign the substitute returns prepared by the IRS. As such, *Gless's* ruling is inapplicable here.

dischargeability purposes focus on the degree of the debtor's cooperation with officials in admitting the extent of liability, and in consenting to immediate assessment. In the present case, although Debtor eventually admitted to the full amount of liability, he did not do so immediately, or without a fight. As such, the lower court's decision that Debtor failed to file constructive returns for the tax years in question was not clearly erroneous, but was instead soundly based on the record. Accordingly, the court's conclusion that Debtor's tax debt is nondischargeable under Section 523(a)(1)(B) is similarly correct.

Finally, Debtor contends that "[t]he Bankruptcy Court's order denying [Debtor's] motion for summary judgment violates [Debtor's] Fifth Amendment right of due process and equal protection under the law." In particular, Debtor asserts that, in making clearly erroneous factual findings regarding the extent of Debtor's efforts to file accurate tax forms, the lower court discriminated against Debtor on the basis of his "debtor class," in violation of the Fifth Amendment to the United States Constitution. In addition, Debtor claims that he "had a liberty and property interest in those filed tax forms in 1989," and that the lower court's wrongful ruling deprived him of said interests without due process of law.

The Court finds Debtor's arguments to be without merit. Even assuming Debtor possesses the constitutional rights he claims entitlement to, the Court has affirmed the Bankruptcy Court's factual determinations, finding them to be grounded in the record. As such, Debtor's claim that the lower court's "clearly erroneous" rulings were unconstitutional cannot stand.

For the foregoing reasons, the Court hereby AFFIRMS the ruling of the Bankruptcy Court. This appeal is hereby DISMISSED. Appellant's Motion for Oral Argument is hereby DENIED as MOOT.

See id. (citing cases holding that substitute returns filed with the debtor's signature do not

qualify as constructive returns for dischargeability purposes).